1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JACQUELINE ZHANG,<br><br>  Plaintiff,<br><br>  v.<br><br>COUNTY OF MONTEREY, MONTEREY COUNTY RESOURCE MANAGEMENT AGENCY, and MONTEREY COUNTY PARKS DEPARTMENT,<br><br>  Defendants. | Case No. 17-CV-00007-LHK<br><br>**ORDER DENYING PLAINTIFF'S PETITION FOR WRIT OF MANDATE**<br><br>Re: Dkt. Nos. 245, 246 |

Plaintiff Jacqueline Zhang ("Plaintiff") sues Defendants County of Monterey, Monterey County Parks Department, and Monterey County Resource Management Agency (collectively, "the County") for causes of action arising out of the County's termination of Plaintiff's employment with the County. Before the Court is Plaintiff's petition for writ of mandate under California Code of Civil Procedure § 1085, which the Court is judicially adjudicating. *See* ECF No. 187. Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES Plaintiff's petition for a writ of mandate under California Code of Civil Procedure § 1085.

# I. BACKGROUND

## A. The County's Personnel Policies and Practices Resolution

The instant case stems from the County's termination of Plaintiff's employment with the County. Employment with the County is governed by the County's Personnel Policies and Practices Resolution ("PPPR"), which was in effect at all times relevant to the instant case. *See* Exh. 4.[1]

The PPPR provides that newly appointed employees shall have a probationary period, which is "[a] working test period required before an appointment to a permanent or seasonal position is completed." Exh. 4 at 534. The PPPR states that "[u]nless a shorter initial probationary period is set forth in the applicable memorandum of understanding, this test period shall be a minimum of twelve (12) months." *Id.* The PPPR provides that "[a]n employee serving his/her initial probationary period shall have no right to appeal from adverse action and serves at the pleasure of the appointing authority." *Id.*

The PPPR distinguishes an initial probationary period, which applies to newly appointed employees, with a disciplinary probationary period, which applies to employees who are being disciplined. See Exh. 4 at 15 ("An employee serving his/her initial probationary period shall have no right to appeal from adverse action and serves at the pleasure of the appointing authority. In the case of an employee serving a period of disciplinary probation, however, the forfeiture of appeal rights shall extend only to the act(s) and/or omission(s) which constitute the underlying basis for such disciplinary probation."); see also id. ("A working test period [is] required before an appointment to a permanent or seasonal position is completed. Unless a shorter initial probationary period is set forth in the applicable memorandum of understanding, this test period shall be a minimum of twelve (12) months. . . . In the case of disciplinary probation, the period of time [is] set forth in the action placing the employee on disciplinary probation during which the terms of the disciplinary probation must be satisfied.").

Moreover, in a section entitled "Disciplinary Actions," the PPPR states the following:

---

[1] This Order cites to the exhibits admitted at trial according to their exhibit number. Pursuant to this Court's Pretrial Conference Order, ECF No. 133, joint exhibits were labeled from 1 to 100, Plaintiff's exhibits were labeled from 101 to 200, and the County's exhibits were labeled from 201 to 300.

Case No. 17-CV-00007-LHK
ORDER DENYING PLAINTIFF'S PETITION FOR WRIT OF MANDATE

"The appointing authority may take disciplinary action against any employee in the service of Monterey County provided that the rules and regulations prescribed herein are followed, except that adverse action against an employee who serves at the pleasure of the appointing authority, pursuant to Section B.16 of this document shall be accomplished by a single written notice which sets forth the adverse action and provides the opportunity for the employee to discuss that action with his/her appointing authority prior to its effective date. As used in this section, 'disciplinary or adverse action' shall mean dismissal, suspension, disciplinary demotion, reduction in salary, disciplinary probation, or formal written reprimand." *Id.* at 115.

### B. The Start of Plaintiff's Employment

Plaintiff is a licensed California Certified Public Accountant. 6/7/2021 Trial Tr. at 92:15–16, ECF No. 240. Before working for the County, Plaintiff had over ten years of experience in accounting and finance. Exh. 185. However, Plaintiff had never worked for the government before working for the County. *Id.*

On September 9, 2015, Amy Rodriguez, a Human Resources analyst with the County, gave Plaintiff a letter, which stated that the County's Parks Department had made a conditional offer of employment to Plaintiff and that Plaintiff had accepted the conditional offer. Exh. 1. The letter stated that Plaintiff had accepted "the Finance Manager I position in the Parks Department with a tentative start date of Monday, October 5, 2015." *Id.* The letter stated that "[t]here is a probationary period of twelve (12) months, starting from time of appointment." *Id.* The 12 month probationary period was in line with the PPPR. Exh. 4 at 534. The letter stated that Plaintiff would report to "Mark Mariscal, Director of Parks" and that Plaintiff's "hours of work are typically Monday through Friday, 8:00 a.m. to 5:00 p.m." Exh. 1. The letter directed Plaintiff to indicate her acceptance of the offer letter by signing and returning it. *Id.* Plaintiff signed the letter on September 9, 2015. *Id.*

On September 29, 2015, Mariscal emailed Plaintiff "to extend an invitation to" Plaintiff to observe a Parks Commission meeting on Thursday, October 1, 2015. Exh. 2. In his email, Mariscal stated that Plaintiff "may want to spend 30-60 minutes just sitting and listening to the

3

meeting" in order to get "a 'flavor' of some of the work" that the Parks Department did. *Id.* However, Mariscal told Plaintiff that "[i]f you cannot make it, do not worry about it." *Id.* Mariscal also testified that attending the meeting was not a requirement. 6/9/2021 Trial Tr. at 737:1–5, ECF No. 242. Plaintiff testified that Mariscal followed up his email with a call, in which he "strongly recommend[ed]" that Plaintiff attend the meeting. 6/7/2021 Trial Tr. at 122:4–10. Mariscal testified that he did not remember such a call, but that a call could have happened. 6/9/2021 Trial Tr. at 737:16–18, 746:24–25.

Plaintiff testified that she attended the Parks Commission meeting on Thursday, October 1, 2015. *Id.* at 122:17–123:10. Plaintiff also testified that she spent time on Friday, October 2, 2015 reviewing the Parks Department's budget. *Id.* at 124:14–15. Plaintiff additionally testified that Plaintiff spent Saturday, October 3, 2015 visiting a couple of the County's parks. *Id.* at 124:16–23. However, Plaintiff testified that she was not directed by anyone at the Parks Department to review the Parks Departments' budget or visit the County's parks. 6/8/2021 Trial Tr. at 299:20–24, ECF No. 241.

On Monday, October 5, 2015, Plaintiff started her first day in the Parks Department office. That day, Plaintiff met with Human Resources representatives at the County and completed the following initial employment documentation:

- On October 5, 2015, Plaintiff completed a Form I-9, which requires that Plaintiff provide documentation showing that Plaintiff is legally authorized to work in the United States before starting work. Exh. 202; *see also* 6/9/2021 Trial Tr. at 718:5–25. Plaintiff's I-9 listed her first day of employment as October 5, 2015. *Id.* Plaintiff signed and dated the I-9 on October 5, 2015. *Id.*

- On October 5, 2015, Plaintiff completed a W-4, which permits an employer to withhold income tax before an employee is paid. Exh. 205. Plaintiff signed and dated the W-4 on October 5, 2015. *Id.*

- On October 5, 2015, Plaintiff completed the oath of affirmation of office, which requires that a government employee swears to uphold the Constitution and to "well and faithfully discharge the duties [she] is about to enter." Exh. 204. The oath of affirmation of office must be completed before the employee starts work. 6/9/2021 Trial Tr. at 718:5–25. Plaintiff signed and dated the oath of affirmation of office on October 5, 2015. *Id.*

- On October 5, 2015, Plaintiff completed an emergency contact form. Exh. 201. Plaintiff signed and dated the form on October 5, 2015. *Id.*

- On October 5, 2015, Plaintiff completed a Member Action Request for CalPers, the California state employee benefit system, which allowed her to start receiving benefits under that system. Exh. 207. In Plaintiff's Member Action Request, Plaintiff wrote that her hire date and the effective date of the action were October 5, 2015. *Id.*

- On October 5, 2015, Plaintiff completed a Member Reciprocal Self-Certification Form for CalPers. Exh. 208. Plaintiff signed and dated that form on October 5, 2015. *Id.*

### C. Plaintiff's Employment with the Parks Department

For the first eight months of her employment, Plaintiff reported to Mariscal. During that period of time, Mariscal received some complaints regarding the abrupt tone of some of Plaintiff's email communications. 6/9/2021 Trial Tr. at 739:15–741:5. Mariscal talked to Plaintiff about the complaints and thought the issue was resolved by his talk with Plaintiff. *Id.* at 739:21.

On July 14, 2016, Plaintiff received an evaluation from Mariscal, her supervisor. Exh. 3. The evaluation lists the "Beginning/Ending Period" as "10/5/2015 to 5/31/2016." *Id.* The evaluation contained a section entitled "Type of Appraisal," which included the "8 Month Probationary" and "Annual" boxes. Moreover, the evaluation contained a check box to indicate "Retention/Permanent Status." Exh. 3. The evaluation rated Plaintiff's performance as "Above Standard" or "Fully Meets Standard" as to all the listed metrics. *Id.* The evaluation's narrative states that Plaintiff "easily passes her probation." *Id.* However, Mariscal testified that this statement was a mistake and that he mistakenly thought Plaintiff's probation was "eight or nine" months, not twelve months. 6/9/2021 Trial Tr. at 738:7–14.

After Plaintiff received Mariscal's evaluation, Plaintiff emailed her husband, Gary Giboney, who is the County's Chief Deputy Auditor-Controller, regarding Mariscal's evaluation. Exh. 212. Giboney responded: "I would have the '8 Month Probationary' Box checked for the type of appraisal and the Step Increase Box checked with the date the increase was approved. I would also have the Retention/Permanent Status Box check[ed] since it clearly says 'she easily

passes her probation in the narrative.' Then accept the appraisal and sign at the employee [box], return to Mark for signature." *Id.* Giboney never instructed Plaintiff to have Mariscal correct the start date to October 1 or 3, 2015. In her response to Giboney, Zhang stated: "[Mariscal] checked the '8 month' and 'annual.' I just called him about the other two. Since he has sent it to Nick after I signed, he will check with Karina." *Id.*

Mariscal testified that he tried to check the box to indicate "Retention/Permanent Status," but he learned from Human Resources personnel that he could not do so because Plaintiff's probation was 12 months, not 8 or 9 months. 6/9/2021 Trial Tr. at 748:2–4. Thus, Mariscal never checked the box to indicate "Retention/Permanent Status." Exh. 3.

### D. Plaintiff's Employment with the Resource Management Agency

In July 2016, as part of a reorganization process within the County, the Parks Department merged with the County's Resource Management Agency ("RMA"). At this same time, Mariscal left the Parks Department. Accordingly, Shawne Ellerbee, who was the Deputy Director of Administrative Services for RMA, became Plaintiff's new supervisor. While Mariscal's experience had been in parks and recreation and management, Ellerbee had experience in government accounting. 6/9/2021 Trial Tr. at 668:18–669:10.

On July 13, 2016, Plaintiff received an organizational chart with her new supervisor within RMA, Ellerbee. Exh. 275. That day, Plaintiff forwarded the organizational chart to Giboney. *Id.* Giboney stated: "I think you will need to really commit yourself for the next six months or so and show what you can do for them. Expectations will be much higher for your work now and your supervisor has a reputation for being fair but tough. I don't think you will be getting off as early and not as flexible working conditions." *Id.*

During her time as Plaintiff's supervisor, Ellerbee noticed several accounting mistakes by Plaintiff that appeared to stem from a lack of familiarity with government accounting rules. For example, Ellerbee testified that, on one occasion, Plaintiff tried to classify a transfer of funds as deferred revenue when, according to Ellerbee, such a classification was not possible under government accounting rules. *Id.* at 677:9–14. Ellerbee testified that on another occasion Plaintiff

submitted financial statements that overstated expenditures because she used the "accrual" method of accounting instead of the "modified" method used in government accounting. *Id.* at 678:7–12. On another occasion, Plaintiff did not understand that funds owed to the County, but not received within sixty days of year-end, cannot be shown on financial statements as revenue in government accounting. *Id.* at 679:3–17.

Jessica Cordiero-Martinez, a Finance Manager II with RMA, testified that she tried to mentor and train Plaintiff as Plaintiff started working at the RMA. *Id.* at 553:7–9. Cordiero-Martinez also reviewed Plaintiff's work. *Id.* at 553:9. In reviewing Plaintiff's work, Cordiero-Martinez had concerns on several occasions about Plaintiff's work, which had mistakes that appeared to stem from Plaintiff's lack of familiarity with government accounting. *Id.* at 553:12–14. For example, Cordiero-Martinez noticed that Plaintiff included depreciation, which, according to Cordiero-Martinez, would have been permitted under business accounting rules but not government accounting rules. *Id.* at 553:16–554:14. On another occasion, Plaintiff made a mistake regarding deferred revenue under government accounting rules. *Id.* at 555:18–556:4. Cordiero-Martinez attempted to discuss these issues with Plaintiff, but Plaintiff seemed to not understand and seemed resistant and "set in her ways." *Id.* at 556:15–17.

Additionally, shortly after Ellerbee began supervising Plaintiff, Ellerbee noticed that Plaintiff's emails "were coming across a bit curt" or "pretty stern" and thus met with Plaintiff to ask her "if she could start softening the tone of her e-mails." *Id.* at 680:3–7. In addition, one of the County's vendors, California Parks Company ("CalParks")—which provided services to the Parks Department in operating recreational areas—complained about Plaintiff's email communications. *Id.* at 606:23–607:1. Specifically, Dina Del Dotto, the Finance Director of CalParks, testified that Plaintiff "could be very disrespectful and condescending and unprofessional at times" in her communications with Del Dotto and her staff. *Id.* at 608:19–22; *accord* ECF No. 55 ¶ 4. Del Dotto testified that one of her star employees resigned following Plaintiff's communications. 6/9/2021 Trial Tr. at 612:11–12. Accordingly, Del Dotto asked Ellerbee to have Del Dotto's staff "not deal directly" with Plaintiff. *Id.* at 612:13–14. In response, Ellerbee required that all CalParks

communications had to go to Cordiero-Martinez, who acted as an intermediary between CalParks and Plaintiff. *Id.* at 566:18–24. CalParks and Plaintiff no longer communicated directly. *Id.*

In addition, Heather Lasley, an Office Assistant at the County, reached out to Ellerbee regarding the tone of Plaintiff's emails. *Id.* at 689:8–23. Lasley told Ellerbee that Lasley did not feel that Plaintiff was treating her fairly. *Id.* Ellerbee met with Plaintiff and told Plaintiff that her emails were coming across as disrespectful. 6/8/2021 Trial Tr. at 340:3–7; 6/9/2021 Trial Tr. at 689:8–23.

On July 26, 2016, Plaintiff sent emails to Ellerbee, Guertin, and others. *See id.* at 332:4 – 336:7; Exh. 223. In those emails, Guertin asked Plaintiff for a recommendation regarding utilities for rangers that live on site at one of the County's parks. Exh. 223. Plaintiff responded that she did not know what would happen to the rangers and explained that she "started working for the County at the end of last calendar year," so she did not have familiarity with operational issues. *Id.* Plaintiff then forwarded these emails to Giboney, who told her not to "say anything like [that] again." *Id.* Giboney told Plaintiff not to tell her managers that she did not know how to find solutions or do her job. *Id.* Giboney additionally told Plaintiff: "Don't tell [Management] you aren't up to the job because you don't have enough experience or have enough information." *Id.* Based on these emails, Plaintiff was asked at trial whether she was concerned that she did not have enough experience to do her job. 6/8/2021 Trial Tr. at 335:1. In response, Plaintiff testified: "I did not have enough time for me to know enough . . . I [was] still in probation, still picking [things] up." *Id.* at 335:3–5.

Cordiero-Martinez testified that, on October 4, 2016, Plaintiff spoke with Cordiero-Martinez about how hard Plaintiff's new role at RMA had been. 6/9/2021 Trial Tr. at 571:13–16. Cordiero-Martinez testified that, on October 4, 2016, Plaintiff also said that Giboney had told Plaintiff, "You know, you're almost there, you know, you almost met that year, you're almost there, it's going to be okay and you're going to get through this and, you know, next year is going to be easier." *Id.*

**E. The Termination of Plaintiff's Employment**

On October 4, 2016, at almost 5:00, Plaintiff was summoned by a human resources employee to meet with Ellerbee and another human resources employee in the office conference room. 6/7/2021 Trial Tr. at 169:7–170:7. At the meeting, they passed Plaintiff a negative performance appraisal. *Id.* at 170:9–13. Plaintiff states that she took "about 15 minutes" to read the negative performance appraisal and was shocked by its "false and misleading" contents. *Id.* The negative performance appraisal summarized several of Plaintiff's accounting and other mistakes and recounted many of the problems and complaints regarding Plaintiff's email communications with co-workers and outside vendors detailed above. Exh. 112. After Plaintiff finished reading the negative performance appraisal, Plaintiff signed the appraisal and checked the box that read "I disagree with the evaluation and request a meeting with the Reviewing Officer." Exh. 112.

Finally, after Plaintiff had signed the performance appraisal, Ellerbee handed Plaintiff a letter and told Plaintiff that Ellerbee was releasing Plaintiff from probation. 6/7/2021 Trial Tr. at 171:8–9. That letter informed Plaintiff that Plaintiff was being released from her "position of Finance Manager I, and from County service, effective October 4, 2016 at 5:00 p.m. because of [Plaintiff's] failure to satisfactorily complete [her] probationary period." Exh. 170. It also informed Plaintiff that (1) Plaintiff's termination was "not subject to appeal"; and (2) if Plaintiff wanted to respond to her termination, Plaintiff could do so by either sending a written response to John Guertin, the "Interim Deputy Director of Land Use and Community Development," or meeting with Guertin in person "no later than Tuesday, October 11, 2016." *Id.*

After her October 4, 2016 termination, Plaintiff wrote two letters to Guertin challenging the grounds for her termination, one dated October 10, 2016, and the other dated October 14, 2016. Exhs. 109, 110. In her October 10, 2016 letter, Plaintiff stated that she "was employed by the County of Monterey as of Monday, October 5, 2015 (official start date due to County Payroll System Requirement for starting on the first day of a payroll period-but actually had beg[u]n performing [her] job duties Thursday, October 1, 2015)." Exh. 109.

Plaintiff also met in person with Guertin on October 24, 2016. Exh. 111. On November 28, 2016, Guertin sent a letter to Plaintiff stating that (1) Guertin had completed his review of

9

Ellerbee's October 4, 2016 performance appraisal of Plaintiff and Plaintiff's objections to that performance appraisal; and (2) based on his review, Guertin was "in agreement with the rating provided in the" October 4, 2016 performance appraisal and had "signed off" on that performance appraisal "as the Reviewing Officer." *Id.*

Plaintiff also filed a complaint of discrimination with the County's Equal Opportunity Office on October 27, 2016. In that complaint, Plaintiff stated that she "had started working for the County of Monterey, Parks Department as a Finance Manager I officially on Monday, October 5, 2015 reporting to Mark Mariscal, Parks Director." ECF No. 52, Exh. 16 at 96.[2]

On October 11, 2016, Plaintiff filed a request for unemployment benefits with the State of California. Exh. 298; 6/8/2021 Trial Tr. at 267:19–22. Plaintiff's request stated that her reason for termination was "rejection during probation (probation period: one year), rejected one day before my anniversary." *Id.*

### F. Procedural History

Plaintiff filed the instant action against the County on January 3, 2017. ECF No. 1 ("Compl."). Plaintiff's complaint asserted the following eight causes of action against the County: (1) discrimination on the basis of race and national origin in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; (2) discrimination on the basis of marital status, race, and national origin in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*; (3) discrimination on the basis of race in violation of 42 U.S.C. § 1981; (4) deprivation of a property interest without due process of law in violation of the Fourteenth Amendment of the United States Constitution (pursuant to 42 U.S.C. § 1983); (5) deprivation of a liberty interest without due process of law in violation of the Fourteenth Amendment of the United States Constitution (pursuant to 42 U.S.C. § 1983); (6) deprivation of a property interest without due process of law and employment discrimination on the basis of race and national origin in violation of the California Constitution; (7) writ of mandate under California Code of Civil

---

[2] Plaintiff's complaint filed with the County's Equal Employment Office was not introduced or admitted at trial.

Case No. 17-CV-00007-LHK
ORDER DENYING PLAINTIFF'S PETITION FOR WRIT OF MANDATE

Procedure § 1085; and (8) writ of mandate under California Code of Civil Procedure § 1094.5. *See id.*

On February 15, 2018, the County filed a motion for summary judgment. ECF No. 51. On April 24, 2018, the Court granted the County's motion for summary judgment as to seven of Plaintiff's eight claims. ECF No. 72. The Court then declined to exercise supplemental jurisdiction over Plaintiff's petition for a writ of mandate pursuant to California Code of Civil Procedure § 1085. *Id.* at 39–44. Specifically, the Court concluded that Plaintiff's petition for a writ of mandate raised a novel issue of state law. *Id.* at 41–43. The Court then concluded that economy, fairness, convenience, and comity weighed in favor of declining supplemental jurisdiction. *Id.* at 43–44.

On February 10, 2020, the Ninth Circuit affirmed this Court's ruling on Plaintiff's following five claims: (1) discrimination on the basis of race and national origin in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; (2) discrimination on the basis of marital status, race, and national origin in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*; (3) discrimination on the basis of race in violation of 42 U.S.C. § 1981; (4) deprivation of a liberty interest without due process of law in violation of the Fourteenth Amendment of the United States Constitution (pursuant to 42 U.S.C. § 1983); and (5) writ of mandate under California Code of Civil Procedure § 1094.5. *Zhang v. County of Monterey*, 804 F. App'x 454, 456–57 (9th Cir. 2020).

However, the Ninth Circuit concluded that there were genuine issues of material fact as to two of Plaintiff's claims: (1) deprivation of a property interest without due process of law in violation of the Fourteenth Amendment of the United States Constitution (pursuant to 42 U.S.C. § 1983) and (2) deprivation of a property interest without due process of law in violation of the California Constitution. *Id.* at 456. Specifically, the Ninth Circuit concluded that there were genuine issues of material fact regarding whether Plaintiff was a probationary or permanent employee when she was terminated on October 4, 2016 because Plaintiff had presented evidence that her probationary period ended on October 2, 2016, one year after the first day of Plaintiff's initial pay period on October 3, 2015. *Id.*

11

As to Plaintiff's petition for a writ of mandate under California Code of Civil Procedure § 1085, the Ninth Circuit concluded that the Court had not abused its discretion in declining supplemental jurisdiction. *Id.* at 457–58. However, the Ninth Circuit remanded Plaintiff's petition for a writ of mandate so that the Court could exercise its discretion afresh. *Id.* at 458.

On May 4, 2021, the County requested that Plaintiff's petition for a writ of mandate be judicially adjudicated. ECF No. 125. In the alternative, the County requested that the Court decline supplemental jurisdiction over Plaintiff's petition for a writ of mandate. *Id.* On June 4, 2021, after multiple rounds of briefing by both sides, the Court granted the County's request for judicial adjudication. ECF No. 187. The Court rejected the County's request to decline to exercise supplemental jurisdiction over Plaintiff's petition for a writ of mandate because the County's request was made four and a half years after Plaintiff filed the instant case and one month before jury trial was set to begin, so the factors of economy, convenience, and fairness weighed in favor of retention of supplemental jurisdiction. *Id.* at 4–7.

Between June 7, 2021 and June 10, 2021, the Court held a jury trial on Plaintiff's claims for: (1) deprivation of a property interest without due process of law in violation of the Fourteenth Amendment of the United States Constitution and (2) deprivation of a property interest without due process of law in violation of the California Constitution. On June 10, 2021, the jury reached a verdict for the County on Plaintiff's due process claims. ECF No. 235.

Specifically, the jury answered "no" to the following question on the verdict form: "Has Plaintiff Jacqueline Zhang ('Plaintiff') proved that she was not a probationary employee when Defendants County of Monterey, Monterey County Resource Management Agency, and Monterey County Parks Department (collectively, 'the County') discharged Plaintiff from Plaintiff's employment on October 4, 2016?" *Id.*

The jury then answered "no" to questions asking: (1) whether Plaintiff had proved that the County had deprived her of a protected property interest without due process of law in violation of Article I, Section 7 of the California Constitution and (2) whether Plaintiff had proved that the County had deprived her of a protected property interest without due process of law in violation of

12

the Fourteenth Amendment of the United States Constitution. *Id.*

On June 18, 2021, the parties filed additional briefing on Plaintiff's petition for a writ of mandate pursuant to California Code of Civil Procedure § 1085. ECF Nos. 245, 246.

## II. DISCUSSION

Plaintiff contends that Plaintiff is entitled to a writ of mandate pursuant to California Code of Civil Procedure § 1085 ordering that she be reinstated to her County position with back pay. *See* Compl. at 18–21; ECF No. 246. Plaintiff asserts that Plaintiff is entitled to a writ of mandate pursuant to California Code of Civil Procedure § 1085 because the County violated the County's Personnel Policies and Practices Resolution ("PPPR") in terminating her. *Id.* Plaintiff contends that: (1) she was a permanent employee of the County at the time of her termination, and (2) the County violated the PPPR by not providing her with the process due to permanent employees before termination. ECF No. 246 at 1. Plaintiff further contends that, even if she had been a probationary employee of the County at the time of her termination, the County violated the PPPR by not providing her with the process due to probationary employees. *Id.* at 1–2.

The Court proceeds to analyze Plaintiff's petition for writ of mandate as follows. First, the Court discusses the elements of a petition for writ of mandate under California Code of Civil Procedure § 1085. Second, because the PPPR provides different process for probationary employees and permanent employees, the Court initially addresses whether Plaintiff was a probationary employee or a permanent employee at the time of her termination. The Court concludes that Plaintiff was a probationary employee at the time of her termination. Third, the Court addresses whether the County violated the PPPR and whether Plaintiff is entitled to a writ of mandate.

### A. Petition for Writ of Mandate Under California Code of Civil Procedure § 1085

California Code of Civil Procedure § 1085 states that a writ of mandate may be issued "by any court to any inferior tribunal, corporation, board, or person" to either (1) "compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station"; or (2) "compel the admission of a party to the use and enjoyment of a right or office to

13

which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person." Cal. Code. Civ. Proc. § 1085. Individuals who—like Plaintiff—believe that they were wrongfully terminated from positions of public employment frequently seek to use § 1085 to compel reinstatement to their positions and back pay. *See, e.g.*, *Agosto v. Bd. of Trs. of Grossmont-Cuyamaca Cmty. Coll. Dist.*, 189 Cal. App. 4th 330 (2010).

To be entitled to a writ of mandate under § 1085, Plaintiff must show two elements. First, Plaintiff must show that the County has a "clear, present, and ministerial duty" to reinstate her. *Kavanaugh v. W. Sonoma Cty. Union High Sch. Dist.*, 29 Cal. 4th 911, 916 (2003). Second, Plaintiff must show that Plaintiff has a "clear, present, and beneficial right to performance of that duty entitling her to a writ of mandate." *Id.*

As to the first element, Plaintiff must show that the County has a "clear, present, and ministerial duty" to reinstate her. *Id*. "Absent a clear duty imposed by law . . . mandamus is not a proper vehicle for resolution for the asserted grievance." *Physicians Comm. for Responsible Medicine v. L.A. Unified Sch. Dist.*, 43 Cal. App. 5th 175, 185 (2019) (quotation omitted). "A duty is ministerial when it is the doing of a thing unqualifiedly required." *Redwood Coast Watersheds Alliance v. State Bd. of Forestry & Fire Protection*, 70 Cal. App. 4th 962, 970 (1999); *see also Kavanaugh*, 29 Cal. 4th at 916 ("A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists.").

Second, Plaintiff must show that Plaintiff has a "clear, present, and beneficial right to performance of that duty entitling her to a writ of mandate." *Kavanaugh*, 29 Cal. 4th at 916. As to the second element, Plaintiff must "establish a clear right to the requested relief." *Jacobs v. Regents of Univ. of Cal.*, 13 Cal. App. 5th 17, 28 (2017).[3]

---

[3] In addition, California Code of Civil Procedure § 1086 provides that a writ of mandate "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." Cal. Code Civ. Proc. § 1086.

Case No. 17-CV-00007-LHK
ORDER DENYING PLAINTIFF'S PETITION FOR WRIT OF MANDATE

### B. Plaintiff was a probationary employee at the time of her termination.

In the instant case, Plaintiff contends that Plaintiff is entitled to a writ of mandate because the County violated the PPPR in terminating her. ECF No. 246. Specifically, Plaintiff contends that the County violated the PPPR because she was a permanent employee and was due the process afforded to a permanent employee under the PPPR. *Id.* at 9–11. Accordingly, the Court considers whether Plaintiff was a probationary employee or a permanent employee at the time of her termination in order to determine what process Plaintiff was due under the PPPR.

The jury found that Plaintiff had not proved that she was a permanent employee when she was terminated from her employment on October 4, 2015. *See* ECF No. 235 (jury verdict). The Court agrees. The Court also finds that Plaintiff was a probationary employee at the time of her termination.

The PPPR provides that newly appointed employees shall have a probationary period, which is "[a] working test period required before an appointment to a permanent or seasonal position is completed." Exh. 4 at 534. The PPPR states that "[u]nless a shorter initial probationary period is set forth in the applicable memorandum of understanding, this test period shall be a minimum of twelve (12) months." *Id.*[4] Plaintiff's offer letter also stated that "[t]here is a probationary period of twelve (12) months, starting from time of appointment." Exh. 1.

In the instant case, the Court concludes that Plaintiff was appointed on October 5, 2015 and was thus within her probationary period when she was terminated on October 4, 2016. The Court comes to this conclusion for the following reasons. First, Plaintiff's letter for the County indicated that Plaintiff would start on October 5, 2015. Second, Plaintiff filled out her initial employment documentation, some of which she was required to complete before starting work, on October 5, 2015. Third, Plaintiff's July 14, 2016 evaluation from Mariscal lists her start date as October 5, 2015. Fourth, Plaintiff made statements to Cordiero-Martinez indicating that Plaintiff's probationary period would end on October 5, 2016. Fifth, Plaintiff listed on her request for

---

[4] Neither party contends that a memorandum of understanding changed the probationary period in the instant case.

unemployment benefits that she was released from probation one day before her anniversary. Finally, Plaintiff filed an Equal Employment Opportunity complaint that listed her start date as October 5, 2015. The Court addresses each reason in turn.

First, Plaintiff's letter from the County, which stated that the County's Parks Department had made a conditional offer of employment to Plaintiff and that Plaintiff had accepted the conditional offer, stated that Plaintiff's position had "a tentative start date of Monday, October 5, 2015." Exh. 1. The letter further stated that Plaintiff's hours of work would be "typically Monday through Friday, 8:00 a.m. to 5:00 p.m." *Id.*

Second, consistent with the letter, on Monday, October 5, 2015, Plaintiff started her first day in the Parks Department office. That day, Plaintiff met with Human Resources representatives at the County and completed the following initial employment documentation:

On October 5, 2015, Plaintiff completed a Form I-9, which requires that Plaintiff provide documentation showing that Plaintiff is legally authorized to work in the United States before starting work. Exh. 202; *see also* 6/9/2021 Trial Tr. at 718:5–25. Plaintiff's I-9 listed her first day of employment as October 5, 2015. *Id.* Plaintiff signed and dated the I-9 on October 5, 2015. *Id.*

On October 5, 2015, Plaintiff completed a W-4, which permits an employer to withhold income tax before an employee is paid. Exh. 205. Plaintiff signed and dated the W-4 on October 5, 2015. *Id.*

On October 5, 2015, Plaintiff completed the oath of affirmation of office, which requires that a government employee swears to uphold the Constitution and to "well and faithfully discharge the duties [she] is about to enter." Exh. 204. The oath of affirmation of office must be completed before an employee starts to work for the government. 6/9/2021 Trial Tr. at 718:5–25. Plaintiff signed and dated the oath of affirmation of office on October 5, 2015. *Id.*

On October 5, 2015, Plaintiff completed an emergency contact form. Exh. 201. Plaintiff signed and dated the form on October 5, 2015. *Id.*

On October 5, 2015, Plaintiff completed a Member Action Request for CalPers, the California state employee benefit system, which allowed her to start receiving benefits under that

system. Exh. 207. In Plaintiff's Member Action Request, Plaintiff wrote that her hire date and the effective date of the action were October 5, 2015. *Id.*

On October 5, 2015, Plaintiff completed a Member Reciprocal Self-Certification Form for CalPers. Exh. 208. Plaintiff signed and dated that form on October 5, 2015. *Id.*

Furthermore, Plaintiff never requested that her start date be changed from October 5, 2015 on any of her initial employment documentation. The Court notes that, had Plaintiff started work prior to October 5, 2015, Plaintiff would have had an incentive to correct her start date on her initial employment documentation because her probationary period would have started earlier and her retirement benefits would have started accruing earlier.

Third, Plaintiff's July 14, 2016 evaluation from Mariscal lists the "Beginning/Ending Period" as "10/5/2015 to 5/31/2016." *Id.* Emails between Plaintiff and Giboney indicate that Plaintiff and Giboney reviewed Plaintiff's July 14, 2016 evaluation. Exh. 212. In those emails, Giboney advised Plaintiff to ask Mariscal to check the "Retention/Permanent Status" box, the "8 Month Probationary" box, and the "Step Increase" box with the date the increase was approved. *Id.* However, neither Plaintiff nor Giboney indicated that the October 5, 2015 start date listed on the evaluation was incorrect and should be corrected.

Fourth, Cordiero-Martinez, who tried to mentor and train Plaintiff, testified that Plaintiff stated to Cordiero-Martinez on October 4, 2016 that the year had been tough, but Giboney had told Plaintiff, "You know, you're almost there, you know, you almost met that year, you're almost there, it's going to be okay and you're going to get through this and, you know, next year is going to be easier." 6/9/2021 Trial Tr. at 571:18–23.

Fifth, on October 11, 2016, Plaintiff filed a request for unemployment benefits with the State of California. Exh. 298; 6/8/2021 Trial Tr. at 267:19–22. Plaintiff's request stated that her reason for termination was "rejection during probation (probation period one year), rejected one day before my anniversary." *Id.*

Finally, on October 27, 2016, Plaintiff filed a complaint of discrimination with the County's Equal Opportunity Office. In that complaint, Plaintiff stated that she "had started

working for the County of Monterey, Parks Department as a Finance Manager I officially on Monday, October 5, 2015 reporting to Mark Mariscal, Parks Director." ECF No. 52, Exh. 16 at 96. Thus, Plaintiff started her employment with the County on October 5, 2015. Accordingly, when Plaintiff was terminated on October 4, 2016, less than twelve months after she started, Plaintiff was a probationary employee.

Despite the evidence to the contrary, Plaintiff contended at trial that she was not a probationary employee for four reasons. First, Plaintiff contended that she started work on Thursday, October 1, 2015, when she attended a Parks Commission meeting. 6/10/2021 Trial Tr. at 824:1–7. Second, Plaintiff contended in the alternative that she started work on Saturday, October 3, 2015, the starting date of the pay period listed on Plaintiff's first paycheck. ECF No. 246 at 9–10. Third, Plaintiff contended that Mariscal ended her probation on July 14, 2016. 6/10/2021 Trial Tr. at 829:19–23. Finally, Plaintiff contended that she was past the twelve month probationary period because she was terminated after 5:00 p.m. on October 4, 2016. *Id.* at 832. None of these arguments are persuasive.

First, Plaintiff contended that she started work on Thursday, October 1, 2015, when she attended a Parks Commission meeting. 6/7/2021 Trial Tr. at 122:17–123:10. It is undisputed that Mariscal emailed Plaintiff to invite her to listen to the Parks Commission meeting for 30 to 60 minutes in order to get "a 'flavor' of some of the work" that the Parks Department did. Exh. 2. However, Mariscal told Plaintiff in his email that "[i]f you cannot make it, do not worry about it." *Id.* Plaintiff testified that Mariscal followed up his email with a call, in which he strongly recommended that Plaintiff attend the meeting. 6/7/2021 Trial Tr. at 122:4–10. However, Mariscal testified that he did not remember such a call, but a call could have happened. 6/9/2021 Trial Tr. at 737:16–18, 746:24–25. Moreover, Plaintiff's letter from the County, which stated that the County's Parks Department had made a conditional offer of employment to Plaintiff and that Plaintiff had accepted the conditional offer, stated that Plaintiff's position had "a tentative start date of Monday, October 5, 2015." Exh. 1. The letter further stated that Plaintiff's hours of work would be "typically Monday through Friday, 8:00 a.m. to 5:00 p.m." Id. Based on the record, the

18

Court concludes that Plaintiff did not start work on Thursday, October 1, 2015. Mariscal made clear in his email that it was not mandatory for Plaintiff to attend the Parks Commission meeting. Exh. 1. Moreover, Plaintiff did not fill out her initial employment documentation or begin working at the County offices until Monday, October 5, 2015. Exhs. 201, 202, 204, 207, 208.

Second, Plaintiff contended in the alternative that she started work on Saturday, October 3, 2015. Exh. 101. The upper right corner of Plaintiff's first paycheck lists the "Pay Period Begin Date" as Saturday, October 3, 2015 and the "Pay Period End Date" as Friday, October 16, 2015. *Id.* However, County Human Resources personnel testified that these dates are about the pay period, which pertains to all County employees, rather than reflecting Plaintiff's specific start date. Moreover, numerous current and former County employees, including Holm, Guertin, Ramirez-Bough, and Ellerbee, testified that the pay period begin date is not the first day of an employee's probationary period. 6/9/2021 Trial Tr. at 720:15–17. Indeed, most County employees work Monday through Friday, and if the pay period were the first day of an employee's probationary period, those employees who work Monday through Friday would begin their probationary period on a Saturday. Indeed, Plaintiff's own letter stated that her normal days of employment were Monday to Friday. Exh. 1. Accordingly, it would make little sense for Plaintiff's probationary period to have begun on a Saturday, a day when she was not present in County offices and when the County's offices were closed.

Finally, Plaintiff never mentioned October 3, 2015 as a potential start date until more than a year into this litigation. Indeed, on October 5, 2015, Plaintiff stated that her start date was October 5, 2015 on Plaintiff's I-9 form, her W-4 form, her emergency contact form, her oath of affirmation of office, and her CalPers paperwork. Exh. 3, 201, 202, 204, 205, 207, 208. Mariscal's July 14, 2016 evaluation also stated that Plaintiff's start date was October 5, 2015. Exh. 3. During Plaintiff's employment with the County, Plaintiff never changed her start date from October 5, 2015 to October 3, 2015 on her I-9 form, her W-4 form, her emergency contact form, her oath of affirmation of office, her CalPers paperwork, or her July 14, 2016 evaluation from Mariscal despite the fact that changing her start date to earlier would have made her probationary period

Case No. 17-CV-00007-LHK
ORDER DENYING PLAINTIFF'S PETITION FOR WRIT OF MANDATE

1    end earlier and her retirement benefits accrue earlier. Exhs. 3, 201, 202, 204, 205, 207, 208.

2         Even after Plaintiff's employment was terminated on October 4, 2016, Plaintiff's own

3    submissions to the County also never mention October 3, 2015 as a potential start date. Plaintiff's

4    October 10, 2016 letter to Guertin stated that Plaintiff "was employed by the County of Monterey

5    as of Monday, October 5, 2015 (official start date due to County Payroll System Requirement for

6    starting on the first day of a payroll period- but actually had beg[u]n performing [her] job duties

7    Thursday, October 1, 2015)." Exh. 109.

8         Plaintiff also filed a complaint of discrimination with the County's Equal Opportunity

9    Office on October 27, 2016. In that complaint, Plaintiff stated that she "had started working for the

10   County of Monterey, Parks Department as a Finance Manager I officially on Monday, October 5,

11   2015 reporting to Mark Mariscal, Parks Director." ECF No. 52, Exh. 16 at 96.

12        In addition, Plaintiff filed a request for unemployment benefits with the State of California

13   on October 11, 2016. Exh. 298; 6/8/2021 Trial Tr. at 267:19–22. Plaintiff's request stated that her

14   reason for termination was "rejection during probation (probation period: one year), rejected one

15   day before my anniversary." *Id.*

16        Even after Plaintiff filed her complaint in this case on January 3, 2017, Plaintiff did not

17   claim that October 3, 2015 was her start date. In Plaintiff's January 3, 2017 complaint, Plaintiff

18   alleged that her state date was October 1, 2015.  ECF No. 1. In Plaintiff's November 10, 2017

19   deposition, Plaintiff stated that her start date was October 5, 2015. 6/8/2021 Trial Tr. at 263:12–

20   14. In Plaintiff's November 25, 2017 interrogatories, Plaintiff stated that her start date was

21   October 1, 2015. Exh. 292.

22        Plaintiff never raised October 3, 2015 as a potential start date until she corrected her

23   deposition transcript on January 8, 2018, over a year after Plaintiff filed the complaint in this case

24   on January 3, 2017 and fifteen months after Plaintiff's employment was terminated on October 4,

25   2016. *Id.* at 263:19–21; Exh. 294. Plaintiff testified at trial that it was only after her November 10,

26   2017 deposition that she was looking at her first paycheck and saw that the payroll period began

27   on October 3, 2015. 6/8/2021 Trial Tr. at 263:19–21. The Court notes that Plaintiff's husband,

28

Giboney, is the Deputy Director of the Auditor Controller's Office for the County and is in charge of payroll for the County, and Giboney claimed at trial that "the first day of employment is . . . the start date for payroll, and that is always on Saturday. It has been since 1974 . . . ." 6/9/2021 Trial Tr. at 523:22–25. Despite instructing Plaintiff to ask Mariscal to check the "Retention/Permanent Status" box, the "8 Month Probationary" box, and the "Step Increase" box on Plaintiff's July 14, 2016 evaluation, Giboney never instructed Plaintiff to correct her state date to October 3, 2015.

In contending that she started on Saturday, October 3, 2015, Plaintiff relies on a section of the PPPR, which states that "promotions, demotions, reclassification, transfers, changes in normal hours worked, additional or deletion of pay differentials and changes in status shall be made effective only at the beginning of a pay period unless the County Auditor-Controller, after receiving a statement of necessity from the appointing authority, approved another effective date." Exh. 4. at 558. However, this section applies only to specific personnel actions, and the start of an employee's probationary period is not one of those actions. 6/9/2021 Trial Tr. at 720:2–6.

Third, Plaintiff contended that Mariscal ended her probation on July 14, 2016, when Mariscal wrote in his evaluation that Plaintiff "easily passes her probation." Exh. 3. However, Mariscal testified that this statement was a mistake and that he mistakenly thought Plaintiff's probation was "eight or nine" months, not twelve months. 6/9/2021 Trial Tr. at 738:10–14. Moreover, the evaluation contained a check box to indicate "Retention/Permanent Status," and that box was never checked. Exh. 3. Plaintiff and Giboney emailed regarding the evaluation, and Giboney directed Plaintiff to ask Mariscal to check the "Retention/Permanent Status" box. Exh. 212. Mariscal testified that he tried to check the box to indicate "Retention/Permanent Status," but he learned from Human Resources personnel that he could not do so because Plaintiff's probation was 12 months, not 8 or 9 months. 6/9/2021 Trial Tr. at 748:2–4. These circumstances demonstrate that Plaintiff was aware that she remained on probation. Moreover, even if Mariscal had checked the box, there is no indication, from the PPPR or otherwise, that doing so would have been sufficient to change the length of Plaintiff's probation from twelve months to eight or nine months. Furthermore, to the extent that Plaintiff relies on her own expectations regarding

United States District Court
Northern District of California

Mariscal's evaluation, Plaintiff's emails with Giboney demonstrate that Plaintiff knew that she remained on probation. Exh. 212.

In addition, during trial in the instant case, Plaintiff testified that she was on probation as of July 27, 2016, which was after Mariscal's July 14, 2016 evaluation of Plaintiff. *See* 6/8/2021 Trial Tr. at 335:5. Specifically, during trial, Plaintiff was asked about emails that she sent to Ellerbee, Guertin, and others on July 26, 2016. *See id.* at 332:4 –336:7; Exh. 223. In those emails, Guertin asked Plaintiff for a recommendation regarding utilities for rangers that live on site at one of the County's parks. Exh. 223. Plaintiff responded that she did not know what would happen to the rangers and explained that she "started working for the County at the end of last calendar year," so she did not have familiarity with operational issues. *Id.* Plaintiff then forwarded these emails to Giboney, who told her not to "say anything like [that] again." *Id.* Giboney told Plaintiff not to tell her managers that she did not know how to find solutions or do her job. *Id.* Giboney additionally told Plaintiff: "Don't tell [Management] you aren't up to the job because you don't have enough experience or have enough information." *Id.* Based on these emails, at trial, Plaintiff was asked whether she was concerned that she did not have enough experience to do her job. 6/8/2021 Trial Tr. at 335:1. Plaintiff testified on June 8, 2021 at trial: "I did not have enough time for me to know enough . . . I [was] still in probation, still picking [things] up." *Id.* at 335:3–5.

Finally, Plaintiff contended that she was past the twelve month probationary period because she was terminated after 5:00 p.m. on October 4, 2016. However, even assuming that Plaintiff is correct, nothing in the PPPR supports Plaintiff's interpretation that the twelve month probationary period ends on the last day of the probationary period at 5:00 p.m. Exh. 4 at 534. Rather, the PPPR provides that the probationary period lasts twelve months but does not specify a cut-off time on the last day. *Id.* Moreover, the Court notes that it is undisputed that Plaintiff was terminated before she left work on October 4, 2016, the last day of her probationary period. 6/7/2021 Trial Tr. at 169:7–170:7. Accordingly, the Court concludes that Plaintiff was a probationary employee when she was terminated on October 4, 2016.

**C. Plaintiff has not shown a clear right to reinstatement based on the PPPR.**

United States District Court
Northern District of California

As explained above, *supra* Section II(A), to show that she is entitled to a writ of mandate, Plaintiff must show that (1) the County "has a clear, present and ministerial duty to [reinstate] her" and (2) that she "has a clear, present and beneficial right to performance of that duty entitling her to a writ of mandate." *Kavanaugh*, 29 Cal. 4th at 916. In the instant case, Plaintiff contends that she is entitled to a writ of mandate because the County violated the PPPR in terminating her. The Court must thus interpret the PPPR to determine whether the County violated the PPPR in terminating Plaintiff.

The canons of statutory interpretation apply to the interpretation of municipal resolutions, such as the PPPR.[5] *See Terminal Plaza Corp. v. City & County of San Francisco*, 186 Cal. App. 3d 814, 826 (1986) (applying the canons of statutory interpretation to the interpretation of a resolution). When interpreting a statute, courts "must discover the intent of the Legislature to give effect to its purpose, being careful to give the statute's words their plain, commonsense meaning." *Kavanaugh*, 29 Cal. 4th at 919. The Court "ha[s] no power to rewrite an ordinance or statute so as to make it conform to a presumed intention which is not expressed." *Terminal Plaza Corp.*, 186 Cal. App. 3d at 826. "[A] statute should be interpreted 'with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.'" *Id.* (quotation omitted).

In the instant case, Plaintiff contends that the County violated the PPPR in terminating her because Plaintiff was not provided with notice or an opportunity to respond to her appointing authority prior to the effective date of her termination. ECF No. 246 at 5–9. For her argument, Plaintiff relies on Section D of the PPPR, which governs Disciplinary Actions. Exh. 4 at 634.[6]

---

[5] In order to prevail on her petition for writ of mandate, Plaintiff would have to prove that a violation of a municipal resolution, rather than a municipal ordinance, can serve as the basis for a writ of mandate under California Code of Civil Procedure § 1085. The County contends that a municipal resolution such as the PPPR cannot serve as the basis for a writ of mandate under California Code of Civil Procedure § 1085. ECF No. 245 at 6–9. The Court need not reach this issue because Plaintiff has not established the two elements for a writ of mandate under California Code of Civil Procedure § 1085, i.e. that the County has a clear, present, and ministerial duty to reinstate her, and that Plaintiff has a clear, present, and beneficial right to her reinstatement.

[6] In arguing that she should have been terminated by an appointing authority, Plaintiff relies on

23

Section D.1 of the PPPR states the following:

> The appointing authority may take disciplinary action against any employee in the service of Monterey County provided that the rules and regulations prescribed herein are followed, except that adverse action against an employee who serves at the pleasure of the appointing authority, pursuant to Section B.16 of this document shall be accomplished by a single written notice which sets forth the adverse action and provides the opportunity for the employee to discuss that action with his/her appointing authority prior to its effective date. As used in this section, 'disciplinary or adverse action' shall mean dismissal, suspension, disciplinary demotion, reduction in salary, disciplinary probation, or formal written reprimand.

Exh. 4 at 634. Section D.2 provides that:

> Except when emergency or other special circumstances require immediate action, a notice of proposed disciplinary action (other than for formal reprimand) shall be delivered to the employee, either personally or by United States Postal Service . . . no less than five (5) calendar days prior to the effective date of any disciplinary action against the employee.

Exh. 4 at 635. Plaintiff contends that, under Sections D.1 and D.2, she was entitled to a notice that set forth her termination and provided her with an opportunity to discuss her termination with her appointing authority prior to the effective date of the termination. ECF No. 646 at 6.

However, Section D applies only to "adverse action." Exh. 4 at 634. Section D.1 provides that, "[a]s used in this section, 'disciplinary or adverse action' shall mean dismissal, suspension, disciplinary demotion, reduction in salary, disciplinary probation, or formal written reprimand." *Id.* Thus, on its face, the definition of "disciplinary or adverse action" does not include release from probation, which was the action taken against Plaintiff in the instant case. *See Terminal Plaza Corp.*, 186 Cal. App. 3d at 826 (stating that the Court "ha[s] no power to rewrite an

_____

Section D.1 and the definition of "appointing authority" in the PPPR. ECF No. 246 at 8. However, the definition of "appointing authority" simply defines that term as "[t]he person or group of persons lawfully authorized to make appointments or to remove persons from positions in the County service." See Exh. 4 at 530. Standing alone, this definition does not create a procedural right for Plaintiff. Nor does Plaintiff contend that it does. Rather, Plaintiff relies upon Section D.1 and the definition of "appointing authority" to contend that she had a procedural right to be discharged by an appointing authority. ECF No. 246 at 8. For the reasons discussed above, the Court concludes that Section D.1 does not apply to Plaintiff because it does not apply to release from probation.

24

ordinance or statute so as to make it conform to a presumed intention which is not expressed").

Plaintiff points out that the definition of disciplinary or adverse action does include dismissal. Exh. 4 at 634. The question then becomes whether dismissal includes release from probation. On this issue, the parties point to two different definitions of dismissal within the PPPR. Plaintiff points out that the PPPR defines dismissal as "[a]ny involuntary separation, other than layoff, of an officer or employee from County employment." ECF No. 246 at 8 (quoting Exh. 4 at 532). However, the Court notes that this definition of dismissal comes from the "Definitions" Section at the beginning of the PPPR. *See* Exh. 4 at 532.

By contrast, the County points to a definition of "dismissal" that comes from Section D of the PPPR, upon which Plaintiff relies for her argument and which governs disciplinary actions. Specifically, Section D of the PPPR has a subsection entitled Dismissal, which states as follows:

> D. 10 Dismissal
>
> The continued tenure of each employee shall be subject to his/her satisfactory conduct and the rendering of efficient service. Should the cause of disciplinary action so warrant, an employee may be dismissed for either reason.

Exh. 4 at 637. This provision outlines the limited reasons that an employee can be dismissed: for unsatisfactory conduct or for not rendering efficient service. *Id.* However, probationary employees can be released without cause. *See Mendoza v. Regents of Univ. of Cal.*, 78 Cal. App. 3d 168, 173 (1978) (stating that probationary employees "serve at the will of the employer"); *see also* 6/9/2021 Trial Tr. at 720:18–721:20. Accordingly, this provision, and the term "dismissal," cannot apply to probationary employees. Thus, the term "dismissal" applies to permanent employees only.

Moreover, if the Court were to adopt Plaintiff's argument that Section D of the PPPR applies to release from probation, then the PPPR would be out of sync with due process protections under the United States Constitution and the California Constitution. Under the United States Constitution and the California Constitution, probationary employees can be dismissed without cause and without notice or opportunity to be heard. *See Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 968 (9th Cir. 2011) (stating that non-permanent employees in

United States District Court
Northern District of California

California can be terminated at any time subject only to the limits of public policy); *Dorr v. Butte County*, 795 F.2d 875, 876 (9th Cir. 1986) (stating that "a probationary (or nontenured) civil service employee, at least ordinarily, may be dismissed without a hearing or judicially cognizable good cause"); *Mendoza*, 78 Cal. App. 3d at 173 (stating that probationary employees "serve at the will of the employer and therefore do not possess any property interest in their continued employment").

If Section D of the PPPR applies to release from probation, the County would have to provide probationary employees with "a single written notice which sets forth the adverse action and provides the opportunity for the employee to discuss that action with his/her appointing authority prior to its effective date." Exh. 4 at 634. Without a clear indication that the PPPR intends such a result, the Court declines to conclude that the PPPR requires more process than the United States Constitution or the California Constitution. *See Kavanaugh*, 29 Cal. 4th at 919 ("[A] statute should be interpreted 'with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.'") (quotation omitted). In sum, the Court concludes that Section D of the PPPR does not apply to release from probation.

Moreover, Plaintiff has the burden to prove that Section D of the PPPR applies to release from probation. Plaintiff simply cannot meet that burden.

As a result, Plaintiff cannot prove either of the two elements required for a writ of mandate. As stated above, in order to prevail on her petition for a writ of mandate under § 1085, Plaintiff must prove that (1) the County "has a clear, present and ministerial duty to [reinstate] her and (2) that she has a clear, present and beneficial right to performance of that duty entitling her to a writ of mandate." *Kavanaugh*, 29 Cal. 4th at 916.

As explained above, Section D of the PPPR applies only to "adverse action," and the definition of "adverse action" does not include release from probation. Exh. 4 at 634. Thus, the County did not violate the PPPR in releasing Plaintiff. Accordingly, as to the first element, the County does not have "a clear, present and ministerial duty to reinstate her." *Kavanaugh*, 29 Cal. 4th at 916; *Barnes v. Wong*, 33 Cal. App. 4th 390, 395 (1995) ("The writ may only issue against a

26

respondent with a clear duty to perform a ministerial act . . . ."); *see also Physicians Comm. for Responsible Medicine*, 43 Cal. App. 5th at 185 ("Absent a clear duty imposed by law . . . mandamus is not a proper vehicle for resolution for the asserted grievance."). Similarly, as to the second element, Plaintiff has not shown that "she has a clear, present, and beneficial right to" reinstatement because the County did not violate the PPPR in releasing her from probation. *See Kavanaugh*, 29 Cal. 4th at 916; *Jacobs*, 13 Cal. App. 5th at 28 (affirming the denial of a petition for writ of mandate under California Code of Civil Procedure § 1085 because "appellants' failure to establish a clear right to the requested relief is 'fatal here where they are seeking a writ of traditional mandate'").

In sum, Plaintiff cannot establish either of the elements required for a writ of mandate under California Code of Civil Procedure § 1085. Therefore, the Court DENIES Plaintiff's petition for a writ of mandate under California Code of Civil Procedure § 1085.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's petition for writ of mandate under California Code of Civil Procedure § 1085.

**IT IS SO ORDERED.**

Dated: July 8, 2021

*Lucy H. Koh*

LUCY H. KOH
United States District Judge

United States District Court
Northern District of California